[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before the court on the defendant's motion for a new trial pursuant to R.I. Super. Ct. R. Crim. P. 33.
The defendant, Reginald E. Ducharme, was charged with sexually assaulting Beverly Roy in a four count indictment returned by the grand jury on January 18, 1989 (See Indictment No. P1/89-0208A, State v. Ducharme, filed January 18, 1989). Each count in the indictment is subject to a sentence of twenty (20) years imprisonment. On July 11, 1990, a jury returned guilty verdicts against the defendant on all four of the enumerated offenses. On October 31, 1990, the defendant was sentenced to twenty (20) years on each offense. Specifically, the court ordered that the defendant serve five (5) years in prison for each offense, suspended each one of the offenses for fifteen (15) years, and imposed fifteen (15) years of probation on each sentence to commence upon the defendant's release from prison. Each sentence was to run concurrently.
The defendant timely filed a motion for a new trial. At the May 14, 1991, hearing on this motion, the defendant did not present any newly-discovered physical evidence or any individuals to testify who did not testify at the original trial. What the defendant did present was an affidavit from Pauline Ducharme (Ducharme affidavit), on which the defendant's motion for a new trial is based. The state presented an affidavit from Dorothy Roy (Roy affidavit), who is Pauline Ducharme's mother.
In her affidavit, Pauline Ducharme states she was married to the defendant from December 6, 1986, to January 16, 1991. According to Pauline Ducharme, her daughter, Beverly Roy, told her that in September, 1989, the defendant, the victim's stepfather, had sexually molested her a number of times over a period of years. Shortly after this conversation, Pauline Ducharme states she was involved in a serious accident which incapacitated her for a period of time. Prior to this accident, Pauline Ducharme did not live with the victim or Dorothy Roy. However, to keep in touch with both of them, Pauline Ducharme requested that her mother keep her up-to-date and informed as to the course of events regarding the charges that had been brought against the defendant. Dorothy Roy assured Pauline that she would keep her informed of the case.
The victim and Dorothy Roy saw Pauline Ducharme at least once a week and some weeks more often. When Pauline Ducharme learned that the defendant was proceeding to trial, she informed her mother that she wanted to attend the trial. According to Pauline Ducharme, Dorothy Roy told her that she would not be permitted to go to court since the proceeding was a private matter. Further, Pauline Ducharme states that Dorothy Roy told her that the State had medical evidence to prove that the defendant committed the offenses brought against him. Pauline Ducharme implies that this conversation with her mother prevented her from attending the trial. Pauline Ducharme states: "I wanted to be at that trial since I am Beverly's mother and was married to Reginald at the time of the trial, and I wanted to hear what was going on and answer any questions that anyone had for me." Also, Pauline Ducharme states that she learned of a number of "things" that occurred and that were testified to at the trial which did not "make sense and I don't agree with".[1]
The Roy affidavit provides facts to this court that contradict the Ducharme affidavit. Dorothy Roy states that Pauline lived in an apartment next to her at 5 Main Street, Mapleville, Rhode Island. Beverly Roy lived with Pauline at this apartment until Pauline's accident. After her accident, Pauline Ducharme was in a coma at Rhode Island Hospital until December, 1988. After being released from Rhode Island Hospital and being institutionalized for a period of time, Pauline Ducharme returned to her apartment on March 24, 1989.[2] In addition, Dorothy Roy states that Pauline lived at the apartment on 5 Main Street until October, 1989, but that after the accident, Beverly lived with her.
Prior to the commencement of the defendant's trial, Dorothy states she saw Pauline every week and never told her she could not attend the trial. According to Dorothy Roy, Pauline was not prepared to assist or harm Beverly in regard to the trial because of her memory lapse. Further, Dorothy Roy denies commenting to Pauline Ducharme regarding the type or strength of the state's evidence against the defendant. Dorothy Roy insists that Pauline never said she wanted to attend the trial.
Additionally, Dorothy Roy states that the defendant disciplined the children, and Pauline Ducharme did not have the time to become involved with her children's problems. Dorothy states that the topic of sexual assault was not continuously discussed with the children, but that the children were warned about sexual molestation. In addition, Dorothy Roy asserts that Beverly never resisted in participating in Brownies or outdoor sporting events.
STANDARD OF REVIEW
When ruling on a motion for a new trial based on newly-discovered evidence, the trial justice's decision will not be overturned unless that decision is clearly wrong or unless the trial justice overlooked or misconceived relevant and material evidence. State v. Brown, 528 A.2d 1098, 1104 (R.I. 1987) (citingState v. Collazo, 446 A.2d 1006, 1012 (R.I. 1982)). In his decision, the trial justice must articulate facts on which he or she has based a ruling on a motion for a new trial. State v.Henshaw, 557 A.2d 1204, 1207, 1208 (R.I. 1989); State v.McGranahan, 415 A.2d 1298, 1302 (R.I. 1980); State v. Barnes,122 R.I. 451, 458, 409 A.2d 988, 992 (1979). However, the trial justice does not have to conduct an exhaustive review of the evidence. State v. Cole, 121 R.I. 39, 44, 394 A.2d 1344, 1347 (1978).
When reviewing a motion for a new trial based on newly discovered evidence, a two-part test is employed by the trial justice. The first prong of this test is that the evidence must actually be newly-discovered since trial; the defendant must have been diligent in attempting to discover the evidence for use at the original trial; the evidence must not be merely cumulative or impeaching, but must be material to the issue; and the evidence must be of the kind that would probably change the verdict at a new trial. State v. Brown, 528 A.2d at 1104 (citing State v.Tavares, 461 A.2d 390, 391-92 (R.I. 1983)). See also State v.D'Amario, 568 A.2d 1383, 1386 (R.I. 1990); State v.Bassett, 447 A.2d 371, 375 (R.I. 1982). Second, once the trial justice determines that the evidence meets this threshold test, then he or she must determine whether the evidence presented is credible enough to warrant a new trial. Id. (citing State v.Carsetti, 111 R.I. 642, 652, 306 A.2d 166, 171-172 (1973)).See State v. Estrada, 537 A.2d 983, 986 (R.I. 1988). In doing so, the trial justice must exercise his or her independent judgment as to the credibility of the witnesses and the weight to be given their testimony. Id. See also State v. Correia, 106 R.I. 655, 663, 262 A.2d 619, 623 (1970).
An example of motion being denied for a new trial based on newly-discovered evidence is State v. D'Amario, 568 A.2d 1383
(R.I. 1990). In D'Amario, the Supreme Court rejected the defendant's claim that the trial justice improperly denied his motion for a new trial. 568 A.2d 1385. The defendant was involved in an altercation at the Providence Civic Center with security personnel and was convicted of assault. Id. In his motion for a new trial, the defendant claimed to have discovered several new witnesses who observed the altercation. Id. at 1386. The Supreme Court affirmed the trial justice stating that the new witnesses were not newly discovered after the trial since the defendant was unsure about their actually being at the Civic Center, and that he was not diligent in attempting to locate these newly-discovered witnesses. Id.
Similarly, in the case at bar, the defendant did not present his newly-discovered witness at the hearing for a new trial. Only an affidavit was presented. It is not feasible that Pauline Ducharme's affidavit is newly discovered or actually discovered since the trial. Pauline Ducharme was married to the defendant from December 6, 1986 to January 16, 1991, and is the victim's mother; and even though Pauline did not have daily contact with Dorothy Roy or Beverly, she states that Dorothy Roy kept her informed as to Beverly's condition, and the charges brought against her husband, the defendant.
The court acknowledges that Pauline implies that she did not go to the defendant's trial because Dorothy Roy told her she could not attend and distorted the strength of the state's evidence. However, this is thoroughly rebutted because Dorothy Roy adamantly denies that she informed Pauline Ducharme of the strength of the state's evidence or told her not to attend the trial. It is not conceivable that under these circumstances any evidence offered by Pauline Ducharme is newly discovered.
Pauline Ducharme was referred to many times at trial. Neither the Ducharme affidavit nor the Roy affidavit indicates that Pauline Ducharme was unavailable to be called upon to testify at the time of trial.[3] Therefore, this court finds that there are no grounds upon which the court might conclude that Pauline Ducharme's testimony would constitute "newly-discovered evidence."
Further, this court finds the evidence presented by Pauline Ducharme to be cumulative and not relevant to any issues. InZoglio v. T.W. Waterman Co., 39 R.I. 396, 404, 98 A. 280, 283 (1916), the Supreme Court stated:
 Evidence is cumulative which adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tend[s] to prove the same proposition or ground of claim before insisted on is not cumulative within the true meaning of the rule on this subject. Zoglio, 39 R.I. at 404, 98 A. at 283.
In State v. Tavares, 461 A.2d 390 (R.I. 1983), the Supreme Court ruled that the proffered testimony offered of a new witness by the defendant in a motion for a new trial was not cumulative. However, the court added:
 Were the proffered testimony that of another witness who had observed what occurred in the Gundys' driveway, we would find it to be cumulative because it would be of the same general character as [the] defendant's testimony.
Tavares, 461 A.2d at 392.
In the case at bar, the newly-proffered evidence concerns the following: that Pauline Ducharme was the disciplinarian of the household and not the defendant; that this family unit frequently discussed the subject of sexual molestation; and that Beverly resented the defendant for requiring her to participate in outside activities. The court believes this proffered testimony only adds other circumstances of the same general character, and is not material to any of the issues presented by the defendant. These three enumerated points do contradict the trial testimony, but Dorothy Roy's affidavit supports the testimony given at the trial and is inconsistent with Pauline Ducharme's affidavit.
Finally, this court views the newly-discovered evidence presented by the defendant as not being of the kind that would probably change the verdict at a new trial.
Since Pauline Ducharme's testimony does not meet any of the four factors of the first prong of the test for a motion for a new trial, this court is not required to determine whether the evidence is credible enough to warrant a new trial. State v.Brown, 528 A.2d at 1104; State v. Estrada, 537 A.2d at 986. However, this does not preclude the court from issuing a comprehensive ruling and addressing the question of credibility.State v. Estrada, 537 A.2d at 986. The court notes that at the hearing on defendant's motion for a new trial, the newly-discovered evidence was presented in the form of an affidavit. After consideration of this affidavit, this court finds that the facts alleged in Pauline Ducharme's affidavit are unpersuasive. The allegations contained in the affidavit contradict the weight of testimony provided in the original trial and the Roy affidavit.
CONCLUSION
For the above-stated reasons, the defendant's motion for a new trial is denied. Counsel shall prepare an order reflecting the above for entry.
[1] First, Pauline Ducharme states she was the one who disciplined the victim and not the defendant. She states that the defendant never disciplined any of the children or even laid a hand on them. Pauline Ducharme states she had frequent conversations with the boys and Beverly on what she believed constituted child molestation and how the children should react.Id. at 3. Pauline Ducharme asserts that Beverly never cared for the defendant from the time she met him when the victim was 3 or 4 years old. According to Pauline, the victim did not feel the defendant was her father, resented his moving in with the victim and Pauline, and really seemed to resent the defendant when he forced her to join the Brownies. Id. Further, Pauline Ducharme asserts that the victim resented the defendant's insistence that she participate in outdoor sporting activities. Id. at 3-4.
[2] This accident caused Pauline to suffer a frontal lobe injury which markedly affected her short-term memory. Examples of Pauline Ducharme's memory loss are: Pauline could not remember when she was married; Pauline proclaiming she could only remember what people told her has happened; Pauline not remembering Beverly's allegations of sexual abuse; and that she could recall taking Beverly to counseling.
[3] The court would note again that the defendant was married to Pauline Ducharme until January 16, 1991, which covers the time period of the defendant's trial in July, 1990. The defendant was not incarcerated during the pre-trial and trial proceedings but had been released on $10,000 personal recognizance bail. The court finds it hard to believe that Pauline Ducharme was totally unaware of the proceedings of the defendant's trial.